■ Gilbert O. Robert, Respondent, v. Berlanti Development Co., Inc., Appellant.— The plaintiff-respondent, a duly licensed real estate broker, sued on *quantum meruit* to recover for the value of services rendered as a mortgage broker and builder's consultant. The plaintiff-respondent and the defendant-appellant entered into an oral contract for the rendition of such services for a stated remuneration. The appellant discharged the respondent before the services called for by the contract were completed. The appellant concedes the respondent's right to recover in *quantum meruit*, stating in its brief: "In view of the fact that an action could not be maintained upon the oral agreement of hiring for breach of contract by virtue of the Statute of Frauds, plaintiff attempted to recover upon *quantum meruit* by disregarding the contract. This he had a right to do". As the form of the respondent's cause of action is not questioned by the appellant and as the respondent does not sue on the contract we are not required to determine whether or not the agreement was within the statute. As a matter of interest the respondent, apparently relying on his estimate of the time required to complete the development, testified that he "had an oral contract for two or three years." Although the suit was not upon the contract both parties at the trial gave

their versions of the oral contract. The respondent's brief states: " In return for his services, the plaintiff was to receive one and one-half (1½) per cent of the mortgage on each individual parcel (A42–44). This was broken down to one-quarter of one per cent for site approval, one-quarter of one per cent for FHA conditional commitments, and Veterans Administration panel, one-quarter of one per cent for individual processing, and three-quarters of one per cent for permanent mortgage money (A44)." The appellant's version was 1% for the services rendered plus an additional $25 on the closing. If the agreement was unenforcible by reason of the Statute of Frauds its provisions as to compensation would furnish no proof of value in an action to recover on *quantum meruit* (*Erben* v. *Lorillard*, 19 N. Y. 299; *Elsfelder* v. *Cournand*, 270 App. Div. 162, 165; *Parver* v. *Matthews-Kadetsky Co.*, 242 App. Div. 1, 3; *Black* v. *Fisher*, 145 N. Y. S. 2d 142, 145). If the agreement was without the statute its provisions would be relevant to damages only in an action brought on the contract for its breach. No inquiry was addressed to the respondent as to the value of his services. The respondent did, however, call as an expert witness, a builder's consultant and mortgage broker. This witness testified that " the compensation of a builder's consultant and mortgage broker" in the capital district area was 1½% of the amount " of the mortgage", " broken down " to three-eighths of 1% for Federal Housing Administration and Veterans' Administration site approval, three-eighths of 1% for Veterans' Administration master certificate and Federal Housing Administration commitments as to lots individually and three-quarters of 1% for obtaining mortgages. He stated that the compensation of a builder's consultant and mortgage broker for houses selling for $13,000 would be $195 a unit, apparently assuming that the mortgage would be $13,000 and that the compensation would accordingly be 1½% of the mortgage. On cross-examination he disclaimed any knowledge of what others charged with the exception of a former business association in New York. No inquiry was addressed to him as to the worth of the respondent's services. However, in the circumstances and in the absence of evidence to the contrary we accept the testimony of the expert witness as evidence of value. The appellant completed and sold 20 houses financed by Federal Housing Administration or Veterans' Administration mortgages and 10 homes were sold either with conventional mortgages obtained by the buyers themselves or with purchase-money mortgages accepted by the appellant on the sale. None of the mortgages on these 30 houses was obtained by the respondent. The respondent did, however, obtain Federal Housing Administration and Veterans' Administration site approval for all 30 houses. As to the 20 houses mortgaged with Federal assistance the respondent procured the required agency approval. As to the 10 houses conventionally financed the record does not indicate that the respondent procured Federal Housing Administration commitments. He did procure Federal Housing Administration commitments for 18 units but it cannot be determined that the conventionally financed houses were included within these commitments. The expert testimony was three-eighths of 1% for site approval and three-eighths of 1% for Veterans' Administration master certificate and Federal Housing Administration commitments. The total amount of the mortgages on 19 of the 20 houses financed through Federal Housing Administration or Veterans' Administration mortgages was $248,720. As to the mortgage on the twentieth house there is nothing in the record. The mortgages on 7 of the 10 houses conventionally financed totaled $88,690. As to the other three houses there is in the record no information as to the amount of the mortgages. Consequently as to the one Federally financed house and the three conventionally financed houses we take the average mortgage amount stated by the appellant's president to

be $11,500. Using this figure of $11,500 where no amount of mortgage is available and using the actual amounts of mortgages where available we find the total of the mortgages on the 20 Federally financed houses to be $260,220 and on the other 10 houses to be $123,190. As the reasonable value of his services we find that the respondent is entitled for site approval to three-eighths of 1% of $383,410, the total of the mortgages on all 30 houses, and three-eighths of 1% of $260,220, the total of the mortgages on the Federally financed houses. These amounts are $1,437.79 and $975.83 making a total of $2,413.62, from which a prior payment of $400 is to be deducted. In addition to the services referred to by the respondent's expert witness the respondent engaged, as he testified, in other activities. He introduced an officer of the appellant to a local bank, he arranged for the appointment of a temporary compliance inspector by the Veterans' Administration, he consulted with banks with reference to procuring mortgages, he arranged for the attendance of city officials and officers of local banks and title companies and of personnel managers of various corporations at a preopening reception, for three and a half weeks he was present at the site of the development daily for consultation and advice to the sales force, he consulted with appellant's counsel in the preparation of restrictive covenants, he conferred on changes in maps, plans and specifications, he flew to the factory of a manufacturer of prefabricated homes for consultation, he conferred with city officials about streets, water and sewers and, in other respects not referred to by the expert witness, aided the appellant in its operations. However, neither the expert witness nor any other witness offered an opinion as to the value of these services and the respondent gave no opinion as to value with one possible exception. The respondent did make a reference to 2% for obtaining a revolving line of credit but there is no evidence that he secured such credit, his activity in this regard was limited to introducing the appellant's attorney and an officer of the appellant to an official of a local bank. In extenuation of his omission to offer proof of value the respondent relies on our decision in *Matter of Harvey* (15 A D 2d 834). This had to do with a claim in Surrogate's Court for services rendered in administering to the personal needs of a decedent by providing lodging, meals, washing and ironing. Our decision is not to be taken as an authority for dispensing with proof of value in commercial cases. The trial court found that the liability of the appellant was "limited to the thirty houses which it completed and sold at an average price of $12,000" and found that "the reasonable value of plaintiff's [respondent's] services was 1% of the total, or $3600." As the respondent had received $400, judgment was directed in his favor in the sum of $3,200. The record does not warrant an award on the theory of 1% of the total sales prices. Judgment modified, on the law and the facts, by substituting "two thousand thirteen and 62/100 dollars ($2,013.62)" for "Three Thousand two hundred ($3,200.00) Dollars" and by substituting "two thousand one hundred sixty and 38/100 dollars ($2,160.38)" for "Three Thousand Three Hundred Forty-Six and 76/100 ($3,346.76) Dollars", without costs. Herlihy, J. P., Reynolds, Taylor, Aulisi and Hamm, JJ., concur.